# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Frank W. Kerr Company,

     Plaintiff,   Case No. 16-cv-13880

v.         Judith E. Levy
          United States District Judge

Sav-Mor Franchising, Inc.,

          Mag. Judge Mona K. Majzoub

     Defendant.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [19] AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [29]

This is a Chapter 11 bankruptcy case, in which plaintiff Frank W. Kerr Company seeks to recover on an alleged breach of contract by defendant Sav-Mor Franchising. In short, the parties entered into an on-demand promissory note in the amount of $317,195.14 on February 8, 2000. (Dkt. 1-2.) On October 12, 2016, plaintiff made a demand for payment of what it claimed was the remaining balance on the note of $265,783, plus interest. (Dkt. 1-3 at 2.) Defendant refused to make payment on the note. (Dkt. 1-4.) Plaintiff filed suit on November 1,

2016, alleging a single breach of contract claim. (Dkt. 1.) Defendant filed a counterclaim on December 14, 2016, alleging four state-law counts. (Dkt. 6.)

Pending is plaintiff's motion for summary judgment on its breach of contract claim, (Dkt. 19), and defendant's motion for summary judgment on plaintiff's breach of contract claim and defendant's counterclaims for breach of fiduciary duty and fraud. (Dkt. 29.)

## I.    Factual Background

This is a case arising from a bankruptcy declared by plaintiff under 11 U.S.C. § 101 *et seq*., commonly known as Chapter 11 of the Bankruptcy Code. Jurisdiction is proper under 28 U.S.C. §1334(b).

Many relevant or necessary facts are unclear or omitted entirely from the briefing, including a coherent description of the relationship between the parties, what level of control plaintiff did or did not have over the financial decisions of defendant, and the purpose and origin of many of the exhibits. These are the facts provided, as best the Court can discern them.

The parties do not dispute that on February 8, 2000, they entered into a Promissory Note that required defendant to pay plaintiff the sum

of $317,195.14.  The parties also do not dispute that through at least 2011, no payments were made on the note, and none were demanded. Plaintiff contends that at some point in 2012, defendant made "payment" on the note by way of an agreement to apply an unspecified credit to the balance of the note.  Plaintiff provides two letters to evidence this payment.

The first is a January 19, 2012 letter that has been annotated with electronic notes mentioning the credit and an agreement between Ted Toloff, plaintiff's CFO, and an accountant named Rebecca Scicluna to have the credit apply to the note following an unspecified board meeting on April 18, 2012.  (Dkts. 1-5, 19-3.)  It is unclear who Scicluna is, or what connection, if any, she has to defendant.  The second letter is an August 7, 2012 letter identical to the January 19, 2012 letter, except that the handwritten entries regarding the note have been replaced with typed entries that reference the credit.  There is a third letter, written on March 10, 2014, which also seems to acknowledge the note, but which plaintiff did not rely on in its initial motion.  (Dkt. 26-4.)  The note described in the letters differs slightly from the promissory note entered into on February 8, 2000; the latter note is described as being

for the amount of $317,195.00, while the initial note is described as being for the amount of $317,195.14. The interest rate for the initial note is set at 7% per annum, while interest rate for the note described in the letters is set at 3.5% per annum. (Dkt. 1-3 at 3; Dkt. 1-5 at 2-3.)

Yvonne Gallagher, defendant's executive vice president, has provided an affidavit in which she states that the 2012 letters were form letters she was directed to prepare, and that the versions she sent to plaintiff did not include any information about the note. (Dkt. 25-1.) She also disclaims that defendant ever held a meeting of a Board of Directors at which an agreement regarding the credit was reached. (*Id*.)

Plaintiff also references the financial statements that defendant's auditor, Rehmann Robson, produced, which contained a description of the note as a debt owed. (Dkt. 19-4.)

On October 12, 2016, plaintiff sent its first demand for payment on the note to defendant. (Dkt. 1-3 at 2.) The demand did not include any of the letters from defendant referenced in the complaint, and referenced the original note's terms. On October 19, 2016, defendant refused payment on the note, arguing that the statute of limitations had

passed on any action regarding the note. (Dkt. 1-4.) Plaintiff filed suit on November 1, 2016, asserting a single count for breach of contract. (Dkt. 1.) On December 14, 2016, defendant filed a counterclaim, asserting claims for breach of fiduciary duty, breach of contract, fraud, and conversion/claim and delivery. (Dkt. 6.)

On June 27, 2017, plaintiff filed a motion for summary judgment on its breach of contract claim. (Dkt. 19.) On October 12, 2017, defendant filed a motion for summary judgment on plaintiff's breach of contract claim and defendant's counterclaims for breach of fiduciary duty and fraud. (Dkt. 29.) The motions are fully briefed, and the Court determines that oral argument is not required pursuant to E.D. Mich. Local R. 7.1(f)(2).

## II.    Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the

evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir. 2002)).

## III. Analysis

### A. Plaintiff's Breach of Contract Claim

The primary issue with regard to the breach of contract claim is whether the statute of limitations or statute of repose applicable to notes in Michigan has run. The statute governing claims arising from demands for payment on notes states:

> [I]f demand for payment is made to the maker of a note payable on demand, an action to enforce the obligation of a party to pay the note must be commenced within 6 years after the demand. If no demand for payment is made to the maker, an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of 10 years.

MICH. COMP. LAWS § 440.3318(2).

Defendant argues that this statute contains both a six-year statute of limitations and a ten-year statute of repose, and that both have run. Plaintiff argues that both periods are statutes of limitations,

and that either one can be revived either through a payment or acknowledgment of the debt after either period has run.

The plain language of the statute says that for a note payable on demand, an action must be commenced within six years after a demand is made. However, if no demand has been made, and neither principal nor interest have been paid for a continuous period of ten years, any action to enforce the note is explicitly barred. Together, this means that the holder of the note has ten years from the date a note is made to act on its rights, and six years from the date it makes an unsuccessful demand to pursue an action against the maker of the note, if no payment is otherwise made on the note during the ten-year period.

Here, there is no argument that any demand or payment was made between February 8, 2000 and February 8, 2010. Nothing that could be arguably construed to be a payment was made until April 18, 2012.

In diversity cases reliant on state law, federal courts are required to apply the law of the state's highest court, and "[i]f the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it." *Foust v. Home Depot USA, Inc.*, 166

F. Supp. 3d 881, 889 (E.D. Mich. 2016) (citing *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985)). "The 'data' guiding the court's inquiry includes intermediate appellate court decisions, the dicta of the state's highest court, restatements of law, law review commentaries, and the majority rule among other states." *Id.* (citing *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995)).

Michigan courts have had occasion to interpret § 440.3318(2) twice. In *Schneider v. Spisak*, the Michigan Court of Appeals determined that the six-year statute of limitations barred an action to collect on a note, because the demand was made more than six years before commencement of the lawsuit. *Spisak*, No. 234214, 2002 WL 31357856, at *2 (Mich. Ct. App. Oct. 18, 2002). In *Rahaim v. Rahaim*, the Michigan Court of Appeals determined that § 440.3318(2), which was enacted in 1993, could not apply retroactively to a note made in 1981 on which payment was last made in 1991. *Rahaim*, No. 216664, 2001 WL 1512092, at *3-5 (Mich. Ct. App. Nov. 27, 2001). The *Rahaim* court determined that the 1991 payment, which was made less than ten years after the note was executed in 1981, would have constituted a payment within the meaning of the second sentence of § 440.3318(2),

but that the claim would have been time-barred by the six-year statute of limitations. *Id*., at *5. Notably, that court referred to the ten-year time bar as "the ten-year statute of limitations." *Id*.

Neither of the Michigan Court of Appeals' decisions interpreting § 440.3318(2) are on point. *Rahaim* refers to the ten-year time bar as a "statute of limitations," but only in dicta, analyzing whether a law it determined did not apply to that case would have also barred the underlying claim, had the law applied. There is no indication that the issue of whether the ten-year time bar was a statute of limitations or a statute of repose was before the *Rahaim* court.

"A statute of repose limits the liability of a party by setting a fixed time . . . beyond which the party will not be held liable . . . . Unlike a statute of limitations, a statute of repose may bar a claim before injury or damage occurs." *Frankenmuth Mut. Ins. Co. v. Marlette Homes, Inc.*, 456 Mich. 511, 513 n.3 (1998) (further citations omitted). The Michigan Supreme Court has determined that statutes may contain both statutes of limitations and statutes of repose, and that the same time bar can serve as both. In *Ostroth v. Warren Regency, G.P., L.L.C.*, 474 Mich. 36 (2006), that Court held that MICH. COMP. LAWS § 600.5839(1), which

barred actions against architects, professional engineers, or contractors arising from improvements to real property more than six years after the time of occupancy of the complete improvement, use, or acceptance of the improvement, was both a statute of limitations and of repose. *Ostroth*, 474 Mich. at 45. This was so because the plain language of the statute barred suit after the six-year period ran, regardless of when the damage occurred. *Id.* at 42.

Statues of repose are fundamentally different from statutes of limitations. As the Michigan Supreme Court explained in *Frank v. Linkner*, a statute of limitations is a "law that bars claims after a specified period; specif[ically], a statute establishing a time limit for suing in a civil case, based on the date when the claim *accrued*." *Frank*, 500 Mich. 133, 894 N.W.2d 574, 580 (2017) (citing *Black's Law Dictionary* (10th ed.)) (emphasis in original). A statute of repose, on the other hand, is a "statute barring any suit that is brought after a specified time *since the defendant acted*[.]" *Id.* (citing *Black's Law Dictionary* (10th ed.)) (emphasis in original). "[A] statute of limitations is generally measured from the date a claim accrues, while a statute of repose is measured from some other particular event, such as the date

of the last culpable act or omission of the defendant." *Id.* (citation omitted).

"A statute of repose . . . puts an outer limit on the right to bring a civil action. That limit is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." *CTS Corp. v. Waldburger*, ___ U.S. _____, 134 S. Ct. 2175, 2182 (2014). "The statute of repose limit is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered." *Id.* (internal quotation marks and citations omitted). It is "in essence an absolute bar on a defendant's temporal liability." *Id.* at 2183 (internal punctuation and citation omitted).

The plain language of § 440.3118(2) contains a six-year statute of limitations and a ten-year statute of repose. The statute of repose unambiguously states that if for ten continuous years no demand has been made, and no payment has been made on the note, "an action to enforce the note is barred." The ten-year statute of repose is not related to the accrual of any cause of action, because a cause of action accrues only when a demand is made.

The six-year statute of limitations states that a holder of a note has six years from the time a demand is made to bring an action against the maker of the note. The cause accrues on the date of the demand. Here, no demand was made until more than sixteen years after the note was made. No payment was even arguably made on the note until almost twelve years after the note was made, which was well outside the ten-year statute of repose. The statute of repose absolutely bars plaintiff's action.

Plaintiff also argues that the $51,411.75 credit referenced in the January 29, 2012 and August 7, 2012 letters from Gallagher to plaintiff serves to revive the claim against defendant, because it constituted a payment. In Michigan, "[t]he effect of a payment under the statute [of limitations applicable to a breach of contract claim] is equivalent to a new promise." *Collateral Liquidation, Inc. v. Palm*, 296 Mich. 702, 704 (1941). It is unclear whether this rule, applicable to the statute of limitations for a breach of contract claim, applies to the statute of limitations for an action based on a note, the latter of which was enacted in 1993.

It is also unclear whether a credit constitutes a payment, or what, precisely, the credit at issue in this case actually is. Plaintiff explains nothing about the origin of this credit. Typically, a credit is provided by the creditor to the debtor, and is not necessarily a "payment." The January 19, 2012 letter is annotated with what appear to be several electronically generated notes. In particular, one note states that "[b]ased on discussion with Ted Toloff, CFO of Frank W. Kerr Company and Rebecca Scicluna, Accountant, Sav-Mor and Kerr agreed to offset $51,412 of the $76,900 receivable against the loan. Decision was made at the 4/18/12 board meeting." (Dkt. 1-5 at 3.)

Plaintiff does not explain who Scicluna is, or whether she had the authority to bind defendant to any agreement regarding the application of this credit. Plaintiff does not explain how an agreed-upon reduction in the amount of a debt constitutes a payment of that debt. Plaintiff does not explain how defendant could have agreed to apply the credit in January 2012, when the agreement to apply the credit was not reached until April 2012, or why defendant would have generated another letter four months after that agreement asking plaintiff to verify the agreement for an audit that began in January 2012. (Dkt. 1-5 at 2.) At

the very least, there is a genuine issue of material fact regarding whether the credit constituted a payment, and if defendant ever agreed to use the credit in this manner. However, because the payment could only revive the claim under the statute of limitations, and not the statute of repose, it would not matter either way, because the claim is barred by the statute of repose.

Plaintiff also argues that its claim may be revived even though it is barred, due to the operation of MICH. COMP. LAWS § 600.5866. That statute states:

> Express or implied contracts which have been barred by the running of the period of limitation shall be revived by the acknowledgment or promise of the party to be charged. But no acknowledgment or promise shall be recognized as effective to bar the running of the period of limitations or revive the claim unless the acknowledgment is made by or the promise is contained in some writing signed by the party to be charged by the action.

However, that statute only applies to actions based on contracts barred by the period of *limitation*, not a period of *repose*. Accordingly, it is inapplicable to the absolute bar on plaintiff's claim, and the claim is untimely.

To the extent the August 7, 2012 letter from Gallagher could serve as an acknowledgement of the debt, summary judgment in plaintiff's favor would still not be warranted. Gallagher has submitted an affidavit stating that the letter in question was a form letter she received, provided by defendant's auditor and plaintiff. (Dkt. 25-1 at 2.) She states that the version of the letter she filled out contained no information relating to the note at issue in this case, but instead had only blanks she believes plaintiff later filled in. (*Id.* at 3.) The letters themselves, on their face, appear to have been altered by plaintiff or some other party to evidence an agreement between plaintiff and an accountant, with no explanation of that accountant's relationship to defendant.

In its reply, plaintiff also relies on audit reports prepared by defendant's auditor, and the letters written in 2014 and 2015 that defendant's president and executive vice president wrote to verify the information provided to the auditor. These letters, plaintiff argues, acknowledge the note and revive plaintiff's claim. Plaintiff relies on *In re Booth's Estate*, 326 Mich. 337 (1949), in which a debtor's request of a creditor to confirm a debt to the debtor's auditors served as

acknowledgment of the debt, to show that the letters from defendant to its auditors and the reports defendant's auditors created acknowledge the note.

The Court can find no support for plaintiff's interpretation of these documents as acknowledgments of the debt. An acknowledgement "must contain an unqualified and direct admission of a present subsisting debt which the party is liable and willing to pay and be unaccompanied by any circumstances or declaration which repel the presumption of a promise or intention to pay," *Adams v Detroit*, 232 Mich. App. 701, 707 (1999). The letters written by defendant's officers do not contain such an unqualified and direct admission but instead state that they have provided "all information that is relevant to the preparation and fair presentation of the financial statements," as well as "[a]dditional information that [the auditor has] requested from [defendant] for the purpose of the audit." (Dkt. 26-2 at 6.) It is unclear from the letter whether information about the note fits into the first or the second category, and those statements alone are not "unqualified and direct." Further, the financial reports themselves are statements by defendant's auditors, not defendants.

Regardless, the claim is still barred by the applicable statute of repose. Even if the Court could find that there was no genuine issue of material fact regarding the credit as a "payment" or defendant's "acknowledgements" of the note (and there certainly are such issues), those facts could not revive a claim that is otherwise absolutely barred. Accordingly, summary judgment is granted to defendant on plaintiff's breach of contract claim.

## B. Defendant's Counterclaims for Breach of Fiduciary Duty and Fraud

Defendant filed a counterclaim against plaintiff, asserting claims for breach of fiduciary duty, breach of contract, fraud, and conversion/claim and delivery. (Dkt. 6.) Defendant now moves for summary judgment on the breach of fiduciary duty and fraud claims. (Dkt. 29.)

Michigan defines a fiduciary relationship as:

[A] relationship in which one person is under a duty to act for the benefit of the other on matters within the scope of the relationship. Fiduciary relationships-such as trustee-beneficiary, guardian-ward, agent-principal, and attorney-client-require the highest duty of care. Fiduciary relationships usually arise in one of four situations: (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer.

*In re Estate of Karmey*, 468 Mich. 68, 75 n.2 (2003).

Defendant argues that plaintiff owed it a fiduciary duty because it "agreed to manage the financial affairs and the books and records of [defendant] in the best interests of [defendant]." (*Id.* at 28.) In support of this contention, defendant relies solely on the declaration of Yvonne Gallagher, mentioned above, who is now defendant's president. (Dkt. 29-1.) The affidavit states that plaintiff "undert[ook] the duty to manage the financial affairs, as well as the books and records, of [defendant], [and] agreed to manage the financial affairs and the books and records of [defendant] in the best interests of [defendant]." (*Id.* at 2.) In response, plaintiff provides the affidavit of Jeffrey Tischler, plaintiff's Chief Restructuring Officer. (Dkt. 32-12.) That affidavit states that defendant "was responsible for its own financial affairs." (*Id.* at 4.)

Defendant does not provide any agreement or other evidence that would prove the existence of a fiduciary relationship separate from Gallagher's affidavit. Because the only evidence provided consists of contradictory statements from the opposing parties, and the remainder of the evidence does not speak to the relationship the parties had, the Court cannot determine if a fiduciary relationship existed between

them.  Accordingly, summary judgment on defendant's breach of fiduciary duty claim must be denied.

Much like its breach of fiduciary duty claim, defendant's evidence that it was defrauded consists of a portion of Gallagher's affidavit saying defendant was defrauded.  (Dkt. 29-1 at 5-6.)  Under Michigan law, the elements of fraud are: (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.  *Hi–Way Motor Co. v. Int'l Harvester Co.,* 398 Mich. 330, 336 (1976).

As set forth in defendant's motion and Gallagher's affidavit, plaintiff's alleged fraud consists of the following: first, plaintiff represented to defendant that an entity named Progressive had been charged by defendant for services defendant provided to Progressive, and that defendant received payment for those services; second, defendant materially relied on that representation when it decided to continue to provide services to Progressive; and third, defendant had

not actually been fully paid for the services it provided to Progressive. (Dkt. 29-1 at 5-6.)  Defendant also seems to allege that Progressive was actually an alter ego of plaintiff, but defendant does not argue that this is part of the alleged fraud.  (*Id*. at 6.)[1]

It is not clear what Progressive is or does, why defendant provided services to it, what services defendant provided, what statements plaintiff actually made to defendant regarding billing or payment, when those statements were made, or how this allegedly fraudulent transaction and/or relationship worked.  The Court assumes, but cannot be certain, that the harm defendant allegedly experienced was a lack of payment by Progressive and/or plaintiff.  Because defendant has failed to provide any proof that plaintiff made a false statement (or any specific statement whatsoever), to establish what material role the statement would have played in the ill-defined relationship between the three (or two) entities involved here, or to explain the harm it experienced, the Court cannot grant summary judgment to defendant on its fraud count.

## IV.  Conclusion

---

[1] The Counterclaim alleges that Progressive was a wholly owned subsidiary of plaintiff.  (Dkt. 6 at 4.)

For the reasons set forth above, it is hereby ordered that:

Plaintiff's motion for summary judgment (Dkt. 19) is DENIED;

Defendant's motion for summary judgment (Dkt. 29) is GRANTED as to plaintiff's breach of contract claim and DENIED as to the breach of fiduciary duty and fraud counterclaims; and

Plaintiff's complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: March 2, 2018    s/Judith E. Levy
Ann Arbor, Michigan    JUDITH E. LEVY
           United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 2, 2018.

        s/Shawna Burns
        SHAWNA BURNS
        Case Manager